IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MISSOURI
CENTRAL DIVISION

| | |
|---|---|
| JAMES & GAHR MORTUARY, INC., on behalf of itself and all others similarly situated, | ) ) ) ) |
| Plaintiff, | ) ) Case No. 08-4148-CV-C-NKL |
| v. | ) ) |
| NATIONAL HERITAGE ENTERPRISES, INC., *et al.*, | ) ) **)** |
| Defendants. | |

O R D E R

Plaintiff James & Gahr Mortuary, Inc., brings this putative class action against a number of defendants involved in the sale of pre-need funeral benefit contracts ("PFBCs") by National Prearranged Services, Inc ("NPS"). Plaintiff and the funeral homes it purports to represent acted as agents for NPS in selling PFBCs to funeral home customers. The PFBCs required a customer to make payments to NPS, required the funeral home to provide particular funeral goods and services, and required NPS or a trust holding the proceeds of the PFBCs to pay each funeral home for the goods and services it provided. NPS was to use the funds it received from each customer to purchase a whole life insurance policy on the lives of the customer, so that it could fulfill its obligations to the customer and the funeral home upon the customer's death. NPS purchased those policies from Memorial Life Insurance Company and Lincoln Memorial Life Insurance Company (collectively "Life Insurance Companies"). Plaintiff alleges that those companies and NPS were all ultimately owned and controlled by the RBT II Trust. NPS and the Life Insurance Companies were

1

originally named as defendants in this action but were subsequently dismissed. Plaintiff alleges that NPS and the Life Insurance Companies, as well as the remaining defendants engaged in a complex and fraudulent scheme that has resulted in – and will continue to result in – financial injury to Plaintiff and putative class members. Plaintiff alleges that as a result of the scheme, certain payments contemplated in the PFBCs will not be made; this would result in Plaintiff and other funeral homes like it being forced to provide funeral goods and services at a loss.

Pending before the Court are Motions to Stay filed by Defendant Bremen Bank and Trust Company ("Bremen") [Doc. # 25] and Defendants Southwest Bank, an M&I Bank ("Southwest"), and Marshall and Ilsley Trust Company ("Marshall and Ilsley") [Doc. # 27]. Alo pending are a Motion to Join Motions to Stay filed by Defendants Brent Cassity, Randall Sutton, National Heritage Enterprises, Inc. ("National Heritage"), Forever Enterprises, Inc. ("Forever"), the RBT II Trust, and Howard A. Wittner as Trustee of the RBT II Trust [Doc. # 38], and a Motion to Adopt Reply Suggestions in Support of Defendant Bremen's Motion to Stay filed by Defendants Southwest and Marshall and Ilsley [Doc. # 49]. For the reasons that follow, the court grants the Motion to Join Motions to Stay and the Motion to Adopt Reply Suggestions in Support of Defendant Bremen's Motion to Stay, and denies the Motions to Stay without prejudice.

**I.      Background**

The State of Texas, by and through the Office of the Attorney General, at the request of the Commissioner of Insurance, moved a Texas Court to appoint the Texas Commissioner of Insurance ("Commissioner") as Rehabilitator of NPS, and the Life Insurance Companies, pursuant to Texas Insurance Code Section 443.101 *et seq.*, because those companies were in a hazardous financial condition. On May 14, 2008, the Texas Court granted the Commissioner's request and, pursuant

2

to Texas Insurance Code Section 443.008(a), issued a Rehabilitation Order and Permanent Injunction, appointing the Commissioner as the Rehabilitator of the companies, and issuing automatic stays of any actions involving NPS and the Life Insurance Companies for the duration of the rehabilitation ("Rehabilitation Plan"). Thereafter, Donna J. Garrett, the Special Deputy Receiver in Rehabilitation for the companies, moved for a stay in this case. The instant motions to stay were filed shortly thereafter.

On September 22, 2008, the Texas Court, pursuant to Texas Insurance Code Section 443.058, having found that NPS and the Life Insurance Companies were insolvent, entered an Order Appointing Liquidator, Order Approving Liquidation Plan and Permanent Injunction ("Liquidation Plan"), appointing the Commissioner as Liquidator of the companies and continuing stay entered pursuant to the Rehabilitation Plan. On September 24, 2008, Plaintiff voluntarily dismissed the companies from the instant action.

**II.     Discussion**

Defendants Bremen, Southwest, Marshall and Ilsley, Brent Cassity, Randall Sutton, National Heritage, the RBT II Trust, and Howard A. Wittner as Trustee of the RBT II Trust ("Stay Defendants") maintain that a stay of these proceedings is justified despite Plaintiff's voluntary dismissal of NPS and the Life Insurance Companies. They argue this Court should stay the proceedings: (1) under the *Burford* abstention doctrine; (2) because the liquidated companies are necessary and indispensable parties under Rule 19; and (3) because this Court should honor the Texas Court's stay pursuant to the Full Faith and Credit Act, 28 U.S.C. § 1738 (2008). The Stay Defendants' primary argument is that recovery against certain remaining Defendants would necessarily involve assets held by those Defendants but which are the property of NPS and/or the

3

Life Insurance Companies. The Stay Defendants argue that proceedings with the instant action would interfere with the receivership proceedings in Texas and would possibly subject certain Defendants to inconsistent obligations regarding the disposition of those assets.[1]

In supplemental briefing in opposition to the Motions to Stay, Plaintiff contends that its remaining claims seek only to hold the remaining Defendants responsible for their own alleged misconduct, so that any damages would be paid from the remaining Defendants' own property, and not any property belonging to NPS or the Insurance Companies. Plaintiff concedes that the proceedings in Texas will repair some of the damage it asserts it has suffered as a result of the actions of NPS, the Insurance Companies, and the remaining defendants, through payment of the face amounts of insurance policies by guaranty associations; however, Plaintiff contends, it will still suffer financially because the guaranty associations will not cover the contract growth payments promised in the PFBCs. Plaintiff indicated it would be filing an amended complaint which would "clarify that [its] claims do not violate the permanent injunction or stay because Plaintiff seeks to hold the remaining Defendants liable for their own misconduct."

Plaintiff's prayer for relief seeks damages, and asks that "Defendants be enjoined from continuing or resuming their unlawful acts," but does not seek any specific property from any

---

[1] The Stay Defendants also raise the argument that, pursuant to section 9 of the Liquidation Plan, in exchange for receiving benefits on insurance policies from guaranty associations, funeral homes will have to assign all claims and causes of action relating to those insurance policies to the guaranty associations. Therefore, the Stay Defendants argue, the claims asserted by Plaintiff may be considered assigned to the guaranty associations if and when Plaintiff seeks payment on insurance policies from those associations. The Stay Defendants conclude that the Court should stay the instant action until the Texas Court is able to determine whether Plaintiff will have any remaining claim for compensation after it assigns its claims to the guaranty associations. Some of the Stay Defendants note that Plaintiffs must choose "between allowing their funeral home clients to receive the death benefit from the [guaranty association] or foregoing the *sure* payment by the [guaranty association] in hopes of winning a lawsuit, collecting on a judgment and then getting their funeral home clients a little something more." It is up to the Plaintiff to decide whether proceeding in this action will impact its ability to receive payment from the guaranty associations, and up to the Texas Court to determine whether any potential recovery in this action will reduce any potential payment from the guaranty associations. Even assuming the Plaintiff's claims may, at some point in the future, be assigned to guaranty associations, these claims are the Plaintiff's to bring now.

4

Defendant. Nevertheless, certain counts in the Complaint do appear to seek particular assets that may belong to NPS and/or the Life Insurance Companies.[2]

Abstention is a matter of discretion, and federal courts are not required to abstain even when the criteria for abstention are met. *Bilden v. United Equitable Ins. Co.*, 921 F.2d 822, 826 (8th Cir. 1990). Moreover, a decision on whether to abstain requires an inquiry into the facts of the specific case. *Id.* In this case, whether or not abstention is warranted depends upon what Plaintiff seeks to recover from the remaining Defendants. Once Plaintiff files the amended complaint contemplated in its supplemental briefing on the motions to stay, the remaining Defendants and this Court will be able to determine that issue and, in turn, what effect, if any, proceeding with this action will have on the proceedings in Texas.

---

[2] Count VII, for unjust enrichment, states that "Plaintiff and members of the Class are entitled to a restitution of all fees collected by the Defendants for the sale of pre-need funeral benefit contracts." Count VIII, for money had and received, states that "Plaintiff and members of the Class are entitled to restitution of all fees and expenses paid because of mistake or wrongful conduct by the Defendants." It would appear from the Complaint that NPS, a party in liquidation, was the party that would have collected the fees Plaintiff claims it is entitled to receive in restitution in Counts VII and VIII.

**III.	Conclusion**

Accordingly, it is hereby ORDERED that

(1) Defendants' Request to Join Motions to Stay [Doc. # 38] is GRANTED;

(2) Defendants' Motion to Adopt Reply Suggestions in Support of Motion to Stay [Doc. # 49] is GRANTED;

(2) Defendants' Motions to Stay [Docs. ## 25, 27] are DENIED without prejudice; and

(3) Within 7 days of the entry of this order, Plaintiff shall file its Amended Complaint.

s/ NANETTE K. LAUGHREY  
NANETTE K. LAUGHREY  
United States District Judge

Dated: October 27, 2008  
Jefferson City, Missouri