IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MISSOURI
CENTRAL DIVISION

| | |
|---|---|
| SPEAKS FAMILY LEGACY CHAPELS, INC. and LAWLOR FUNERAL HOME, LTD., on behalf of themselves and all others similarly situated, </br></br>Plaintiffs,</br></br>v.</br></br>NATIONAL HERITAGE ENTERPRISES, INC., *et al.*,</br></br>Defendants. | Case No. 2:08-cv-04148-NKL |

**O R D E R**

Defendants David R. Wulf and Wulf, Bates, & Murphey, Inc. (collectively "Wulf Defendants"), have filed a motion to dismiss under Rule 12(b)(6) or to join under Rule 19 [Doc. # 103]. Defendants Bremen Bank & Trust Co.; Marshall & Ilsley Trust Co.; and Southwest Bank, (collectively "Trust Defendants") filed a motion to join, dismiss, or stay under Rule 19 [Doc. # 115]. Defendants National Heritage Enterprises, Inc.; Forever Enterprises, Inc.; Howard A. Wittner; Brent Cassity; and Randall Sutton (collectively "National Heritage Defendants") filed a motion to join under Rule 19 [Doc. # 133]; as did National City Bank [Doc. # 135]. Although their motions to join differ slightly, Defendants are generally seeking the joinder of two parties under Rule 19: (1) Donna J. Garrett, and (2) The National Organization of Life and Health Insurance Guaranty Association ("NOLHGA"). Donna J. Garrett is the Special Deputy Receiver ("the SDR") for National

1

Prearranged Services, Inc. ("NPS"); Lincoln Memorial Life Insurance Co. ("Lincoln"); and Memorial Life Insurance Co. ("Memorial") (collectively "the Liquidated Parties"). The National Organization of Life and Health Insurance Guaranty Associations is a national organization that represents several state associations which guarantee payments owed by insolvent insurance companies. For the reasons stated herein, the Wulf Defendants' Rule 12(b)(6) motion is GRANTED in part, and the Rule 19 motions are DENIED.

**I.     Background**

James & Gahr Mortuary, Inc. ("James & Gahr"), was the original Plaintiffs in this putative class action. It sought to certify a class consisting of itself and other funeral homes which had acted as agents for NPS in selling pre-need funeral benefit contracts ("PFBCs"). The PFBCs required a funeral home customer to make payments to NPS, required the funeral home to provide funeral goods and services, and required NPS or a trust holding the proceeds of the PFBCs to pay each funeral home for the goods and services it provided. NPS was to use the funds it received from each customer to purchase a whole life insurance policy on the lives of the customer, which was to be used to fulfill its obligations to the customer and to the funeral home upon the customer's death. NPS purchased those policies from Memorial and Lincoln. NPS is a subsidiary of Defendant National Heritage Enterprises.

In its Complaint, James & Gahr alleged that NPS, Memorial, and Lincoln, as well as the remaining defendants engaged in a complex and fraudulent scheme that has resulted in and continues to result in financial injury to James & Gahr and to the other funeral homes. James & Gahr alleged that as a result of the scheme, certain payments contemplated in the

2

PFBCs would not be made; this would result in James & Gahr and putative class members being forced to provide funeral goods and services at a loss. The relevant payments generally fall into two categories: death benefits and growth payments. Death benefits are the life insurance payouts used to cover the cost of funeral services, and growth payments are an agreed upon interest amount that Plaintiffs also claim they are entitled to under the PFBCs.

James & Gahr originally named NPS, Memorial, and Lincoln as defendants. However, on September 22, 2008, the 205th Judicial District Court of Travis County, Texas, entered a liquidation order placing NPS, Lincoln, and Memorial in receivership due to financial insolvency thereby precluding recovery from those parties. Special Deputy Receiver Garrett was appointed to represent the liquidated parties. Under § 443.154 of the Texas Insurance Code, a Travis County court order, and the Liquidated Parties' liquidation plan, the SDR is authorized to collect any debts due and claims belonging to the Liquidated Parties and to "prosecute any action that may exist on behalf of the creditors, members, policyholders, shareholders of the insurer, or the public against any person, except to the extent that a claim is personal to a specific creditor, member, policyholder, or shareholder."

After NPS, Lincoln, and Memorial were placed in receivership, Speaks Family Legacy Chapels, Inc., and Lawlor Funeral Home, Ltd., (collectively "Speaks & Lawlor") filed an Amended Complaint eliminating the liquidated parties as Defendants. The Amended Complaint also named Speaks & Lawlor as named plaintiffs. On November 11, 2008, James & Gahr filed a notice of voluntary dismissal without prejudice under Federal Rule of Civil

3

Procedure 41(a)(1).

The Plaintiffs and many of the putative class members in this action have received some compensation for death benefits from guaranty associations represented by NOLHGA. Plaintiffs have made an assignment of their death benefit interest to the guaranty associations but claim that they retain the right to recover for growth payments. Both parties acknowledge at least a partial assignment of Plaintiffs' death benefit interest to the guaranty associations.

The Amended Complaint contains eleven counts: (I) Fraudulent Misrepresentation/Omission, against National Heritage Defendants; (II) Negligent Misrepresentation, against National Heritage Defendants; (III) Civil Conspiracy, against National Heritage Defendants; (IV) Missouri Merchandising Practices Act violations, against National Heritage Defendants; (V) Federal Racketeer Influenced and Corrupt Organizations (RICO) Act violations, against all defendants; (VI) Breach of Fiduciary Agreement and/or Duty, against Trust Defendants and Wulf Defendants; (VII) Unjust Enrichment, against all defendants; (VIII) Money Had and Received, against all defendants; (IX) Theft by Deception, against all defendants; (X) Breach of Contract, against National Heritage Defendants; and (XI) Failure to Procure Insurance, against Trust Defendants and Wulf Defendants.

**II.  Discussion**

    **A.  Wulf Defendants' Rule 12(b)(6) Motion**

In 2007 the Supreme Court issued a new standard for evaluating motions to dismiss

4

under Federal Rule 12(b)(6) but cautioned that it had not created a heightened pleading standard. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 562-63, 569 n.14 (2007) (finding that the well-known "no set of facts" standard set forth in *Conley v. Gibson*, 355 U.S. 41 (1957), had "earned its retirement"). Under *Twombly*, for complaints to be viable they must contain enough facts to "nudge [them] across the line from conceivable to plausible." 550 U.S. at 570. The Supreme Court recently clarified the *Twombly* standard, giving two important pieces of guidance to district courts ruling on 12(b)(6) motions: first, "threadbare allegations" and "the-defendant-unlawfully-harmed-me accusation[s]" are insufficient to survive a motion to dismiss; second, district courts should rely on their own "judicial experience and common sense" in making the "context-specific" determination of whether factual allegations make a right to relief plausible. *See Ashcroft v. Iqbal*, 556 U.S. ---, 129 S. Ct. 1937, 1949-50 (2009). Without such factual allegations, "it is hard to see how a claimant could satisfy the requirement of providing not only 'fair notice' of the nature of the claim, but also 'grounds' on which the claim rests." *Twombly*, 550 U.S. at 554 n.3. That said, the factual allegations of a complaint are still presumed to be true and construed in the light most favorable to the plaintiff, "even if it strikes a savvy judge that actual proof of those facts is improbable and that recovery is very remote or unlikely." *Id*. at 556 (quotation omitted). *But see Iqbal*, 129 S. Ct. at 1949 (clarifying that the presumption of truth and favorable construction applied to factual allegations does not apply to *legal* allegations).

### 1. **Breach of Fiduciary Duty**

Under Missouri law, the existence of a fiduciary relationship between the parties is

an essential element of any claim for breach of fiduciary duty. *See Robert T. McLean Irrevocable Trust v. Patrick Davis, P.C.*, SD 28613, 2009 WL 162481, *5 (Mo. Ct. App. Jan. 26, 2009). For a common law fiduciary relationship to exist:

> (1) as between the parties, one must be subservient to the dominant mind and will of the other as a result of age, state of health, illiteracy, mental disability, or ignorance; (2) things of value such as land, monies, a business, or other things of value which are the property of the subservient person must be possessed or managed by the dominant party; (3) there must be a surrender of independence by the subservient party to the dominant party; (4) there must be an automatic or habitual manipulation of the actions of the subservient party by the dominant party; and (5) there must be a showing that the subservient party places a trust and confidence in the dominant party.

*Emerick v. Mut. Benefit Life Ins. Co.*, 756 S.W.2d 513, 526-27 (Mo. 1988) (en banc).

Despite the existence of these five elements at common law, Missouri courts have found that in some circumstances a fiduciary relationship can exist absent all the common law elements. *See A.G. Edwards & Sons, Inc. v. Drew*, 978 S.W.2d 386, 394 (Mo. Ct. App. 1998). Those circumstances may include attorney-client relationships, physician-client relationships, agent-principal relationships, and insurer-insured relationships. *See, e.g., Shaffer v. Terrydale Mgmt. Corp.*, 648 S.W.2d 595, 605 (Mo. Ct. App. 1983) (attorney-client); *Brandt v. Med. Def. Assocs.*, 856 S.W.2d 667, 669-71 (Mo. 1993) (en banc) (physician-client); *State ex rel. Bunting v. Koehr*, 865 S.W.2d 351, 353 (Mo. 1993) (en banc) (agent-principal); *A.G. Edwards*, 978 S.W.2d at 394-95 (insurer-insured). The common thread elevating each of these relationships to the level of a fiduciary relationship is "the

6

special circumstances of the parties relationship where one places trust in another so that the latter gains superiority and influence over the former." *See A.G. Edwards*, 978 S.W.2d at 394 (quoting *State Sec. Ins. Co. v. Frank B. Hall & Co.*, 630 N.E.2d 940, 945 (Ill. App. Ct. 1994)). *See also Shervin v. Huntleigh Sec. Corp.*, 85 S.W.3d 737, 741 (Mo. Ct. App. 2002) ("In looking for a fiduciary relationship, equity [. . .] will look for those instances where a special confidence is reposed on one side with a resulting influence on the other.").

Plaintiffs urge this Court to find a fiduciary relationship between Plaintiffs and the Wulf Defendants because the Wulf Defendants "served as investment advisors for NPS's Missouri Trusts" [Doc. # 65, ¶ 18] and were "independent advisors who had fiduciary responsibilities as to the handling of the pre-need contracts" [Doc. # 65, ¶¶ 15, 19] (ellipses omitted). While the Wulf Defendants had a fiduciary relationship with NPS, there are no factual allegations in the pleadings that plausibly establish a direct relationship of any sort between Wulf Defendants and Plaintiffs, let alone a relationship in which Plaintiffs placed any special confidence in Wulf Defendants. *See Shervin*, 85 S.W.3d at 741. As such, no fiduciary relationship can exist as a matter of law and Plaintiffs have not stated a claim for breach of fiduciary duty against the Wulf Defendants.

### 2.     **Unjust Enrichment**

Under Missouri law, a claim for unjust enrichment has three elements: (1) that a defendant was enriched by the receipt of a benefit, (2) that the enrichment was at the expense of the plaintiff, and (3) that it would be unjust to allow the defendant to retain the benefit. *Exec. Bd. of Mo. Baptist Convention v. Windermere Baptist Conference Ctr.*, 280 S.W.3d

7

678, 697 (Mo. Ct. App. 2009). Plaintiffs have failed to state an unjust enrichment claim for two reasons. First, the quasi contract remedy of unjust enrichment is unavailable because the alleged benefit conferred upon Wulf Defendants was the subject matter of a contract. Plaintiffs concede this point in their brief: "Plaintiffs conferred a benefit upon Wulf Defendants *in the form of pre-need contract payments*" [Doc. # 112, p. 11] (emphasis added). The unjust enrichment claim is unavailable when the alleged benefit conferred is the subject matter of a contract. *See Dubinsky v. Mermart LLC*, 4:08-cv-1806-CEJ, 2009 WL 1011503, \*5 (E.D. Mo. Apr. 15, 2009) (quoting *In re Express Scripts, Inc., PBM Litig.*, 522 F. Supp. 2d 1132, 1148 (E.D. Mo. 2007)).

Second, assuming that the benefit conferred is outside the scope of the PFBCs, Plaintiffs fail to allege anywhere in their Amended Complaint that a benefit was ever conferred on Wulf Defendants by Plaintiffs. The Missouri Supreme Court has held that to state a claim for unjust enrichment, a plaintiff must allege that a benefit was conferred on the defendant by that particular plaintiff. *See Am. Civil Liberties Union/E. Mo. Fund v. Miller*, 803 S.W.2d 592, 595 (Mo. 1991) (en banc). Count VII of Plaintiffs' Amended Complaint alleges that all of the defendants "have been unjustly enriched by co-mingling and converting for personal use the fees and monies paid by funeral customers and others that were to be used to compensate the Plaintiffs and the Class members [. . .] to realize the full benefit of the pre-need funeral benefit contracts at issue herein." [Doc. # 65, ¶ 187]. However, the benefits at issue were paid by individuals either directly to NPS or to class members who forwarded the payments to NPS; it was NPS who then hired Wulf Defendants to provide

8

investment advice [Doc. # 65, ¶¶ 2, 18, 77, 80, 82]. Plaintiffs allege only that, but for Defendants' conduct, they would have received a benefit from PFBCs; yet none of Plaintiffs' money or services are alleged to have passed from them directly to any Wulf Defendant. The Amended Complaint contains no factual allegations that make it plausible that Plaintiffs can satisfy the first two elements of the cause of action for unjust enrichment.

### 3. Money Had and Received

To survive a motion to dismiss, a money had and received claimant must plead three elements: "(1) that the defendant received or obtained possession of the plaintiff's money; (2) that the defendant thereby appreciated a benefit; and (3) that the defendant's acceptance and retention of the money was unjust." *Catapult Learning, LLC v. Bd. of Educ. of City of St. Louis*, 4:07-cv-936-DJS, 2008 WL 1349646, *2 (E.D. Mo. Apr. 8, 2008) (quoting *Ward v. Luck*, 242 S.W.3d 473, 476 (Mo. Ct. App. 2008)). Money had and received is "a very broad and flexible action, which seeks to reach monies which in equity and good conscience ought not to be retained by the defendant but ought to be paid to plaintiff." *Bueneman v. Zykan*, 181 S.W.3d 105, 113 (Mo. Ct. App. 2005). It has for a very long time been the tendency of Missouri courts to widen rather than restrict its scope. *Id.* (citing *Alarcon v. Dickerson*, 719 S.W.2d 458, 461 (Mo. Ct. App. 1986)). *Accord Johnson-Brinkham Co. v. Cent. Bank*, 22 S.W. 813, 815 (Mo. 1893) ("If plaintiff's right to the money is established, and the defendant is shown to have received it under circumstances that he ought not to retain it, the law implies a promise to pay it to the party who ought to have it."). Unlike unjust enrichment, this cause of action can lie even when the defendant did not take money *from*

9

the plaintiff, so long as the defendant received an unjust benefit as a result of obtaining the plaintiff's money. *Catapult Learning*, 2008 WL 1349646 at *2 (citing *Bueneman*, 181 S.W.3d at 113).

Plaintiffs have adequately pled this broad cause of action. The Amended Complaint alleges that Wulf Defendants "co-mingl[ed] and convert[ed] for personal use the fees and monies [. . .] that were to be used to compensate the Plaintiffs" [Doc. # 65, ¶ 187]. No more particular pleading is required, and dismissal of this claim is unwarranted, given the broad nature of the cause of action and the numerous factual allegations of wrongdoing by Wulf Defendants [Doc. # 65, ¶¶ 15-21, 96-107].

### 4. Failure to Procure Insurance

In Missouri, the elements of a claim for negligent failure to procure insurance are (1) that the defendant agreed to procure, for compensation, insurance from an insurance company; (2) that the defendant failed to procure the agreed upon insurance and, in so doing, failed to exercise reasonable care and diligence; and (3) that the defendant's failure resulted in damages to the plaintiff. *Haynes v. Edgerson*, 240 S.W.3d 189, 195 (Mo. Ct. App. 2007) (quoting *Parshall v. Buetzer*, 121 S.W.3d 548, 554 (Mo. Ct. App. 2003)). The cause of action is a tort claim, and its existence arises out of the "duty of care" owed by an insurance broker to his or her clients. *See Zeff Distrib. Co. v. Aetna Cas. & Sur. Co.*, 389 S.W.2d 789, 795 (Mo. 1965) (establishing the cause of action in Missouri and explaining the duty of care). A breach of that duty is negligence that exposes a defendant to tort liability. *See Parshall*, 121 S.W.3d at 548.

In this case, Plaintiffs never requested any Wulf Defendant to procure insurance for them. However, Plaintiffs cite a New Jersey district court case for the proposition that its action against the Wulf Defendants can lie even in the absence of privity between a plaintiff and a particular defendant. *See Impex Agric. Commodities v. Parness Trucking Corp.*, 576 F. Supp. 587, 590-92 (D.N.J. 1983) (finding that insurance brokers, upon agreeing to procure insurance, owe a duty of care to third party beneficiaries of the policies procured by the brokers). In *Impex*, the complaint contained factual allegations that a defendant, who was an insurance agent, breached an agreement to procure insurance that, if obtained, would have prevented a loss suffered by a non-party to the insurance policy. *See id*. The *Impex* case invoked the third party beneficiary theory of contract law, and it involved a count specifically for breach of contract. *See id*. The third party beneficiary theory relied upon by the *Impex* court is well-established in contract law. *See generally* 9-41 *Corbin on Contracts* § 41.1; Restatement (Second) of Contracts § 304.

However, to the extent that the Plaintiffs are alleging a tort claim against the Wulf Defendants; it cannot survive. Plaintiffs cite no case – from Missouri or elsewhere – where a tort action for failure to procure insurance survived when the defendant was not an insurance agent and had not agreed with the plaintiff to procure an insurance policy. The Court was similarly unable to uncover any such case. Because the Amended Complaint contains no factual allegation making it plausible that Wulf Defendants agreed with Plaintiffs to procure any insurance policy – thereby invoking the special duty on which this tort is founded – Plaintiffs have not pled a tort claim for failure to obtain an insurance policy. To

11

the extent Plaintiffs are alleging only a tort claim, this count is dismissed against the Wulf Defendants. To the extent Plaintiffs are alleging a third party beneficiary contract claim, the Wulf Defendants' motion to dismiss is denied without prejudice.

### 5. Theft by Deception

Plaintiffs briefly assert a claim for so-called "theft by deception" [Doc. # 65, ¶¶ 192-94]. Wulf Defendants argue that there is no basis for theft by deception as a cause of action under Missouri law and that it appears nowhere in Missouri statutes or case law. Plaintiffs concede that this count should be dismissed.

### 6. Racketeer Influenced and Corrupt Organizations Act

A complaint for RICO violations under 18 U.S.C. § 1962(c) must allege that the "defendant engaged in (1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity." *Handeen v. Lemaire*, 112 F.3d 1339, 1347 (8th Cir. 1997). "In addition, the plaintiff only has standing if [. . .] he has been injured in his business or property by the conduct constituting the violation." *Sedima, S.P.R.L. v. Imrex Co., Inc.*, 473 U.S. 479, 496 (1985).

Plaintiffs have alleged facts sufficient to state a claim for RICO violations. The Amended Complaint alleges that Wulf Defendants collaborated with NPS, Lincoln, Memorial, and their co-defendants in conducting a business enterprise intended to defraud Plaintiffs and, in so doing, committed "tens of thousands" of acts amounting to racketeering, including mail fraud, wire fraud, and interstate transportation and receipt of stolen money [Doc. # 65, ¶¶ 171-77]. The allegations of mail and wire fraud are pled with particularity as

12

to the circumstances constituting the fraud [Doc. # 65, ¶¶ 174], as required by the Federal Rules. *See* Fed. R. Civ. P. 9(b). Furthermore, the Amended Complaint alleges actual present injury: "As a direct result of Defendants' scheme, Plaintiffs and the other Class members have been injured through the loss of payments for [funeral] services rendered" [Doc. # 65, ¶ 130] (ellipses omitted). For the purposes of a Rule 12(b)(6) motion to dismiss, no further particularity is required to establish either the existence and operation of the racketeering enterprise or actual damage to business or property. *See generally, Abels v. Farmers Commodities Corp.*, 259 F.3d 910, 917-21 (8th Cir. 2001) (detailing the pleading requirements for civil RICO actions predicated on acts of mail or wire fraud). Dismissal of the RICO count at this early stage would be premature.

This is so even though Wulf Defendants argue that "garden-variety" fraud cases and general business disputes should not result in treble damages simply because they may fit the broad language of the RICO Act. *See Trans World Airlines v. Berger*, 864 F. Supp. 106, 108 (E.D. Mo. 1994). However, the *Berger* court was making the point that simply because a single fraudulent scheme may take months or years to carry out, Congress did not intend for all such cases to satisfy the "pattern" element of the RICO Act. *See id.* The fraud which was the subject of the *Berger* case was classified as "garden-variety" because it involved one plan to defraud one victim. In contrast, Plaintiffs' claim involves numerous individuals and corporations playing different roles in an alleged scheme to defraud a class of plaintiffs. *Berger* is readily distinguishable.

    **B.**    **Defendants' Rule 19 Motions to Join**

13

Federal Rule of Civil Procedure 19(a)(1) provides that:

> A person who is subject to service of process and whose joinder will not deprive the court of subject-matter jurisdiction must be joined as a party if: (A) in that person's absence, the court cannot accord complete relief among existing parties; or (B) that person claims an interest relating to the subject of the action and is so situated that disposing of the action in the person's absence may: (i) as a practical matter impair or impede the person's ability to protect the interest; or (ii) leave an existing party subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of the interest.

Fed. R. Civ. P. 19(a).

Where a party is necessary under subsection (a) of Fed. R. Civ. P. 19, but joinder is not feasible, the issue of whether the action should proceed turns on subsection (b) of Fed. R. Civ. P. 19, which provides a non-exclusive list of factors for courts to consider in determining what is required in "equity and good conscience." *See Republic of Phil. v. Pimentel*, 128 S. Ct. 2180, 2188-89 (2008). The factors listed in the rule are:

> (1) the extent to which a judgment rendered in the person's absence might prejudice that person or the existing parties; (2) the extent to which any prejudice could be lessened or avoided by (A) protective provisions in the judgment, (B) shaping the relief, or (C) other measures; (3) whether a judgment rendered in the person's absence would be adequate; and (4) whether the plaintiff would have an adequate remedy if the action were dismissed for nonjoinder.

Fed. R. Civ. P. 19(b). This analysis is case-specific, and district courts have discretion to consider other factors relating to equity and good conscience. *Republic of Phil.* 128 S. Ct. at 1288-89. The party asserting a Rule 19 motion to join or dismiss bears the burden of proving that joinder or dismissal is required. *Grand Acadian, Inc. v. Flour Corp.*, 2:07-cv-

14

00295-PHM, 2008 WL 408874, *2 (W.D. La. Feb. 12, 2008). *See also Sierra Club v. Watt*, 608 F. Supp. 305, 319-21 (E.D. Cal. 1985) (discussing thoroughly the reasons for placing the burden on the moving party).

Subdivision (d) of Rule 19 is titled "Exception for Class Actions." It reads, "This rule is subject to Rule 23." Plaintiffs insist that this subdivision means that Rule 19 is wholly inapplicable in class actions, because class actions are governed only by the provisions of Rule 23. They cite for this contention commentators Wright, Miller, and Kane, as well as a district court decision from Michigan. *See generally* 7 Charles Alan Wright et al., *Federal Practice and Procedure* § 1626 (3d ed. 2009); *Thompson v. Bd. of Educ. of Romeo Cmty. Sch.*, 71 F.R.D. 398, 412 (W.D. Mich. 1976). Wright, Miller, and Kane have stated: "Without the exception provided by Rule 19(d), the utility of the class-action device might be seriously compromised by the joinder requirements in Rule 19." Wright et al., *supra*, § 1626.

The Ninth Circuit Court of Appeals has expressly disagreed with this statement in Wright, Miller, and Kane, holding that "Rule 19(d) simply requires us to respect the language of Rule 23, but allows joinder to the extent its use does not conflict with Rule 23's provisions." *See Shimkus v. Gersten Cos.*, 816 F.2d 1318, 1321 (9th Cir. 1987). *See also Thompson v. Jiffy Lube Intl, Inc.*, 505 F. Supp. 2d 907, 922 (D. Kan. 2007) ("The plain language of Rule 19(d) does not exempt class actions from its provisions; rather, it requires a court to apply Rule 19 to the extent it does not conflict with Rule 23.").

Rule 19(d) on its face does not seem to render Rule 19 entirely irrelevant in class

15

actions, but rather – as the plain language says – Rule 19 is "subject to" the special class action provisions of Rule 23. *See* Fed. R. Civ. P. 19(d). That requires the Court to consider how to harmonize the requirements of Rule 19 and Rule 23.

### 1. The Special Deputy Receiver

This Court finds Defendants' Rule 19 motions regarding the SDR without merit. As a threshold matter, joinder of the SDR as a defendant would not be feasible because of an injunction issued on September 22, 2008, by the Judicial District Court for Travis County, Texas. *See State of Texas v. Mem'l Life Ins. Co.*, D-1-GV-08-000945, slip op. at 7-9 (D. Travis County Tex. 2008) [Doc. # 116, ex. 1]. The injunction is supported by Texas receivership law. *See generally*, TEX. INS. CODE § 443.001, *et seq*.

However, joinder of the SDR as a defendant is not required by Rule 19(a) because Rule 19 does not require joinder of each and every joint tortfeasor or co-conspirator. *See Temple v. Synthes Corp.*, 498 U.S. 5, 7 (1990) (quoting Fed. R. Civ. P. 19 advisory committee's note). Further, even if the SDR should be joined as a defendant under Rule 19(a), the Defendants have not convinced the Court that the case should be dismissed pursuant to Fed. R. Civ. P. 19(b) because it cannot be joined. It would be inequitable to prevent the Plaintiff from recovering from some tortfeasors just because another tortfeasor can't be sued.

To the extent the SDR's interests are aligned with Plaintiffs', meaning she would be joined as a plaintiff, joinder under Rule 19 is not appropriate. Mandatory joinder of all class members as named plaintiffs is inconsistent with the utility of class actions. This is the

16

precise reason that Rule 19(d) contains an exemption for class action lawsuits. At this stage there is insufficient evidence that the named Plaintiffs are not adequate representatives of the SDR in her representative capacity because the Defendants have not met their burden of proof to show that the claims asserted in this lawsuit are owned exclusively by the SDR. It may be that a conflict exists between the Plaintiffs and the SDR, but that has not been proven in the context of this Rule 19 dispute.

### 2. The National Organization of Life and Health Insurance Guaranty Associations

A debtor who is sued has the right to join both the assignor and assignee of the debt. The Third Circuit has stated:

> If a suit is brought by either an assignor or partial assignee, the obligor has the option of requiring joinder of the necessary parties or resorting to interpleader. The fact that the litigation is in the form of a class action rather than an ordinary suit does not impair the obligor's right to insist upon joinder of all interested parties.

*In re Fine Paper Litig.*, 632 F.2d 1081, 1091 (3d Cir. 1980) (citations omitted).

Plaintiffs acknowledge that they have assigned their death benefit claims to the guaranty associations represented by NOLHGA [Doc. # 117, p. 7]. They maintain, however, that the assignment was only partial in scope and that they are still entitled to assert claims before this Court for growth benefit claims. They ask this Court to abstain from ruling on these motions until a Special Master in Texas gives guidance as to whether the growth payment claims are personal to the putative class members and thus not assigned to NOLHGA [Doc. # 149, p. 1 n.1].

17

The determination of the Special Master might be dispositive if the Amended Complaint sought to recover only for the growth payments. However, this assertion is contradicted by the plain language of the Amended Complaint, which repeatedly alleges damages for loss of payment for funeral services rendered – which includes the death benefit [Doc. # 65, ¶¶ 130, 136, 198]. Therefore, the determination of the Texas Special Master as to the ownership of growth payment claims will not fully resolve this Rule 19 motion.

Because Plaintiffs are pleading injury from loss of death benefits, and because they have assigned those benefits to the guaranty associations represented by NOLHGA, NOLHGA is a necessary party to this litigation under Rule 19(a). Failure to join NOLHGA subjects Defendants to a risk of multiple liabilities for the same allegedly tortious conduct. *See* Fed. R. Civ. P. 19(a)(1)(b)(ii); *Schaar v. State of Mo.*, 2:06-cv-00065-MLM, 2007 WL 844553, *4-*5 (E.D. Mo. Mar. 16, 2007).

However, joinder of NOLHGA is not feasible. The assignments made to NOLHGA were made as part of the Texas receivership proceedings, and any legal action arising out of those proceedings is subject to the Texas court's injunction. *See State of Texas v. Mem'l Life Ins. Co.*, D-1-GV-08-000945, slip op. at 7-9 (D. Travis County Tex. 2008) [Doc. # 116, ex. 1] [*see also* Doc. # 135-4, ex. 2.12, Form of Assignment]. Thus, the question turns on an analysis under Rule 19(b) of whether the action can proceed even without NOLHGA's joinder.

In this case, prejudice can be lessened or avoided by protective provisions in the Court's judgment. In the event Plaintiffs ultimately recover damages for death benefit claims

18

alleged in the Amended Complaint, the Court can order that those damages be held in trust for the benefit of the Guaranty Association to which they were assigned. The Court can also ensure that no settlement is approved that sacrifices the interests of the Guaranty Association. These protective provisions realistically reduce the risk to the Defendants of multiple lawsuits without sacrificing Plaintiffs' ability to pursue their claims. Further, although this matter has been pending for some time, there is no evidence that any Guaranty Association has shown an intent to sue the Defendants. This kind of protective provision in any eventual judgment is contemplated by Rule 19(b), and as such this Court finds that the action can proceed, in equity and good conscience, even in the absence of NOLHGA.

### III. Conclusion

Accordingly, it is hereby

ORDERED that Wulf Defendants Rule 12(b)(6) Motion to Dismiss [Doc. # 103] is GRANTED as to Counts VI, VII, IX, and XI and DENIED as to Counts V and VIII.

It is further ORDERED that Defendants Rule 19 Motions [Docs. ## 103, 115, 133, 135] are DENIED.

It is further ORDERED that the stay entered by this Court on June 16, 2009 [Doc. # 164], is lifted, effective immediately.

                                          s/ Nanette K. Laughrey
                                          NANETTE K. LAUGHREY

United States District Judge

Dated:  August 3, 2009  
Jefferson City, Missouri